**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NANCY MILLER,
Plaintiff-Appellant,

v.

BON SECOURS BALTIMORE HEALTH
CORPORATION,
Defendant-Appellee,

and

BON SECOURS HOSPITAL BALTIMORE,

INCORPORATED; BON SECOURS HEALTH
SYSTEM, INCORPORATED; BON SECOURS
NURSING CARE CENTER,
INCORPORATED, Successor to Bon
Secours Heartlands, Incorporated;
ST. AGNES CARE SERVICES,
INCORPORATED, t/a St. Agnes Nursing
and Rehabilitation Center; ST.
AGNES HEALTH CARE, INCORPORATED,
Defendants.

No. 98-2046

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, District Judge.
(CA-97-1834-WMN)

Argued: June 11, 1999

Decided: September 20, 1999

Before WILKINS and HAMILTON, Circuit Judges, and
JACKSON, United States District Judge for the Eastern District of
Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion. Judge Jackson wrote a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Risselle Rosenthal Fleisher, Baltimore, Maryland, for Appellant. Lawrence Stewart Wescott, SEROTTE, ROCKMAN & WESCOTT, P.A., Baltimore, Maryland, for Appellee. **ON BRIEF:** Allen N. Horvitz, FRANKLIN & SCHAPIRO, Baltimore, Maryland, for Appellant. E. Patrick McDermott, Jonathan P. Sills, SEROTTE, ROCKMAN & WESCOTT, P.A., Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Nancy Miller appeals an order of the district court granting summary judgment to the defendant on Miller's disability and age discrimination claims against Bon Secours Baltimore Health Corporation (Bon Secours). We affirm.

I.

The facts, viewed in the light most favorable to Miller, are as follows. Miller was hired by Bon Secours in 1988 and, by September 1990, was working 40 hours per week as a Utilization Review Assistant (URA) in Bon Secours' Home Health/Hospice division (Home Health/Hospice).

In 1989, Miller was diagnosed with Graves' disease, a disorder of the thyroid gland. Her affliction caused exophthalmos, the protrusion

2

of one or both eyeballs resulting from a swelling of the soft tissue in the eye socket. One of the most significant effects of her condition is that she cannot control her eye muscles or move her eyes back and forth without pain, and therefore can read only for very short periods of time.

In May 1993, Bon Secours decided to computerize some of Miller's URA duties. When it became apparent that Miller could not work with computers because of her eye pain, Bon Secours created the new position of Office Clerk for her. Although the position offered Miller only 24 hours of work per week instead of 40, it did not require her to use a computer.

In 1994, in preparation for an accreditation audit from the Joint Commission on Accreditation of Health Care Organizations, Home Health/Hospice hired a consultant to conduct a performance and operation evaluation. The consultant reviewed Home Health/Hospice's operations and, on November 8, submitted a report identifying numerous areas in which improvement was needed in order to comply with accreditation standards. One deficiency noted in the report was the disorganized state of Home Health/Hospice's personnel records.

Shortly thereafter, Bon Secours made several changes regarding its employees and their duties. On November 17, 1994, Bon Secours announced that it was filling two vacant "Medical Records Clerk" positions with two women--both in their twenties--who were to begin work on November 28, 1994, and December 5, 1994, respectively. Six days later, Miller's supervisor, Brenda Johnson, informed Miller that her job would be eliminated on December 12, 1994. Her old duties were to be divided among several employees: the two new Medical Records Clerks and three other employees, one of whom Miller estimated to be in his late fifties. Johnson told Miller that she would be allowed to continue working at Bon Secours "on a special assignment" that would last only a few weeks. J.A. 508. Johnson told her that after the project was completed, Bon Secours might be able to find more projects for her to do.

Miller was informed that her special project would involve charting certain data from personnel files on a matrix for subsequent entry into a database by another employee. Miller told Bon Secours that she

3

could not accept the assignment because she was unable to focus her eyes sufficiently to do the work accurately. She added that working with the matrix would cause her unbearable eye pain. Miller inquired why she had not been informed sooner of Bon Secours' plan to eliminate her Office Clerk position so that she could have applied for one of the Medical Records Clerk positions, to which Johnson replied that they "are full time positions and you know, Mrs. Miller, you have an eye disease." J.A. 217 (internal quotation marks omitted). Miller then attempted to persuade her superiors to allow her to work on something other than the matrices. They refused but urged her at least to attempt the special project. Miller declined and resigned. She was 57 at the time.

After pursuing administrative remedies, Miller brought this action. She alleged that the creation of her Office Clerk position had been an accommodation for her disability and that Bon Secours had violated the Americans with Disabilities Act (ADA) by constructively discharging her because of her disability and by withdrawing the accommodation. See 42 U.S.C.A. § 12112 (West 1995). Miller also alleged that Bon Secours constructively discharged her because of her age, in violation of the Age Discrimination in Employment Act (ADEA). See 29 U.S.C.A. § 623 (West 1999 & Supp. 1999).

The district court granted summary judgment against Miller.[1]

_____

[1] After completion of discovery, Bon Secours moved for summary judgment, Miller filed an opposition to the motion, and Bon Secours filed a reply. Miller then became aware of further evidence in Bon Secours' possession that she believed supported her opposition. She submitted a proposed addendum to her opposition, accompanied by a request that she be permitted to supplement her opposition with the materials. The district court denied as moot Miller's attempt to amend her opposition because the court did "not find any of the arguments presented in that addendum to be persuasive." J.A. 570 n.2.

Miller has appealed the denial of her request to supplement her opposition to Bon Secours' motion for summary judgment but has not explained how the additional material would have affected the decision of the district court to grant summary judgment against her on all of her claims. Miller argues only that the evidence would have demonstrated "inconsistencies in Bon Secours' case." Brief of Appellant at 34. Accordingly, we affirm the ruling of the district court denying the motion to supplement.

4

Regarding the ADA claims, the court concluded that Miller had not created a genuine issue of material fact regarding whether she was constructively discharged, reasoning that as a matter of law a reasonable person in her position would not have felt compelled to resign. The district court also ruled that Miller's claim that Bon Secours wrongfully withdrew its reasonable accommodation of her disability was based on the legally unsupportable theory that an employer that offers an accommodation to an employee's disability and subsequently alters it violates the ADA. The district court further concluded that Miller's failure to create a genuine issue of material fact concerning constructive discharge was dispositive of her ADEA claim.

## II.

Miller argues that the district court erred in granting summary judgment on her claim that she was constructively discharged because of her disability. We disagree.

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge." 42 U.S.C.A. § 12112(a). To establish a cause of action for disability discrimination, a plaintiff must show that (1) she has a disability, (2) she is otherwise qualified for the employment in question, and (3) she was excluded from the employment based on the disability. See Williams v. Channel Master Satellite Sys., Inc., 101 F.3d 346, 348 (4th Cir. 1996) (per curiam). In the absence of direct evidence of discrimination, the McDonnell Douglas proof scheme applies to issues of whether a discharge was based on an employee's disability. See Runnebaum v. Nationsbank of Md., N.A., 123 F.3d 156, 164 (4th Cir. 1997) (en banc). To establish a prima facie case in an ADA discharge case, a plaintiff must demonstrate (1) that she was disabled, (2) that she was discharged, (3) that at the time of the discharge, she was performing at a level that met her employer's legitimate expectations, and (4) that her discharge occurred under circumstances that raise a reasonable inference of illegal discrimination. See id. at 164. In order to state a prima facie case, "[p]laintiff's evidence must be such that, if the trier of fact finds it credible, and the employer remains silent, the plaintiff would be entitled to judgment as a matter of law." Ennis

v. National Ass'n of Bus. and Educ. Radio, Inc., 53 F.3d 55, 59 (4th Cir. 1995). We review de novo the decision of the district court to grant summary judgment. See Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988).

Assuming that Miller can satisfy the first three elements of a prima facie case, she failed to forecast evidence that would have allowed a jury reasonably to infer that the elimination of her position occurred under circumstances that would give rise to an inference of discriminatory animus.[2] See Ennis, 53 F.3d at 62 (explaining that in order to satisfy fourth element of a prima facie case, a plaintiff must "point to [some] circumstance surrounding her discharge that credibly raises an inference of unlawful discrimination"). At the time of Miller's resignation, Miller had been performing her duties as Office Clerk for well over a year without incident. The only evidence we have found in the record that even arguably suggests the possibility that the elimination of Miller's position was due to her disability is Miller's statement that Johnson informed her that she had not urged Miller to apply for the vacant Medical Records Clerk positions because they were full-time positions and Miller had an eye disease. However, implicit in Johnson's alleged statement is the assumption that Miller's disability did not prevent her from performing part-time work. Therefore, because Miller's Office Clerk position required her to work only 24 hours per week, Johnson's statement was not evidence from which a jury could infer that Miller's part-time position was eliminated because of her disability.

That Miller has failed to produce evidence sufficient to give rise to a reasonable inference that the employment action taken here was because of her disability also forecloses Miller's claim that the withdrawal of the previous accommodation of the Office Clerk position violated the ADA. To the extent that Miller contends that she is somehow entitled to lifetime employment because her position was created as an accommodation for her disability, she is incorrect. See Still v.

_____

[2] Although the district court did not reach this issue, we may "affirm on any ground fairly supported by the record." Korb v. Lehman, 919 F.2d 243, 246 (4th Cir. 1990). Because we dispose of this claim on this ground, we do not address Bon Secours' other arguments that Miller failed to establish a prima facie case of disability discrimination.

6

Freeport-McMoran, Inc., 120 F.3d 50, 53 (5th Cir. 1997) (per curiam) (explaining that employer would have no duty under the ADA to provide a disabled employee with a new job when his job was eliminated for reasons unrelated to his disability). Accordingly, the district court correctly granted summary judgment against Miller on her disability discrimination claims.**3**

III.

In sum, the decision of the district court granting summary judgment on all of Miller's claims is affirmed.

AFFIRMED

JACKSON, District Judge, dissenting:

I respectfully dissent. The majority concludes that the district judge did not err in granting summary judgment on Miller's claim that she was constructively discharged because of her disability. In concluding that she did not establish a prima facie case of disability discrimination, it also finds that Miller "failed to forecast evidence that would have allowed a jury reasonably to infer that elimination of her position occurred under circumstances that would give rise to an inference of discriminatory animus." However, the record reflects that there is a genuine issue of material fact on Miller's claim that she was constructively discharged because of her disability which makes summary judgment inappropriate.

Constructive discharge occurs "when `an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job.'" Holsey v. Armour & Co., 743 F.2d 199, 209 (4th Cir. 1984) (quoting J.P. Stevens & Co. v. NLRB, 461 F.2d 490, 494 (4th Cir. 1972)). "A plaintiff alleging constructive discharge must . . . prove two elements: deliberateness of the employer's action, and intolerability of the working conditions." Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985); see also Johnson v. Shalala, 991 F.2d 126, 131 (4th Cir. 1993).

_____

**3** Having reviewed Miller's ADEA claim, we conclude that it also is without merit.

7

The district court properly found that Miller had produced sufficient evidence for a jury to find for her on the deliberateness element. However, a review of this issue is appropriate because the facts are intertwined and supportive of the conclusion that there is a genuine issue of material fact on the intolerability of working conditions element. Deliberateness exists when the actions of the employer were "intended by the employer as an effort to force the employee to quit." Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1354 (4th Cir. 1995) (quoting Paroline v. Unisys Corp., 879 F.2d 100, 114 (4th Cir. 1989)). Such intent can be inferred from actual or circumstantial evidence. See Holsey, 743 F.2d at 209 (citing United States Postal Services v. Aikens, 460 U.S. 711 (1983)). Intent also "may be shown by evidence that an employee's resignation was the reasonably foreseeable consequence of the employer's conduct" and may be inferred from the employer's failure to act when he knows of intolerable conditions. See Amirmokri v. Baltimore Gas and Elec. Co., 60 F.3d 1126, 1132-33 (4th Cir.1995). Deliberateness is shown if company personnel know of the untenable conditions and take no steps to remedy the situation. Id. In other words, intent may be inferred from a failure to act in the face of known intolerable conditions. See Paroline v. Unisys Corp., 879 F.2d 100, 114 (4th Cir. 1989) (Wilkinson, J. dissenting), vacated in part, 900 F.2d 27 (4th Cir. 1990) (en banc) (adopting panel dissenting opinion). A complete failure to act by the employer is not required; an employer may not insulate itself entirely from liability by taking some token action in response to intolerable conditions. The reasonably foreseeable consequence of token action by the employer would still be that the employee resign. The employer's response must be reasonably calculated to end the intolerable working environment. See Landgraf v. USI Film Prods., 968 F.2d 427, 430-31 (5th Cir. 1992) (finding that "[a] reasonable employee would not have felt compelled to resign immediately following the institution of measures which the district court found to be reasonably calculated to stop the harassment."), cert. granted in part, 507 U.S. 908 (1993), and aff'd, 511 U.S. 244 (1994).

Here, evidence is sufficient for a jury to reasonably find Bon Secours' actions were deliberate. Although Bon Secours argues that its managers were merely attempting to streamline the business or meet the requisites for the forthcoming evaluation, a reasonable jury could conclude that the true--albeit unstated--purpose behind man-

8

agement's actions was to force Miller to leave because her disability prevented her from adjusting to management changes. Evidence of such deliberateness can be found in Johnson's comment that they sought to "let go" of Miller.**1**

The parties dispute whether the actions of Bon Secours, including making the focus of Miller's position the entry of data on the matrix, were "intended by Bon Secours as an effort to force the employee to quit." Such intent may be inferred from Miller's repeated insistence to her supervisors that the task would be incredibly painful and impossible given her medical condition. Irrespective of Bon Secours' belief that the job would require no new use of her eyes and therefore, introduce no new pain,**2** the supervisors do not dispute that they were aware of her position that the task would be impossible and that her only alternative if no other position was available would be to quit. The fact that Bon Secours was switching to computer entries and trying to streamline its processing in order to make operations more efficient provides an incentive for Bon Secours to want Miller, who was unable to use computers owing to a medical condition, to quit. Whether Miller's resignation was the reasonably foreseeable consequence of Bon Secours' conduct, and whether deliberateness may be inferred from Bon Secours' failure to act when it knew of intolerable conditions, are also genuine issues of material fact here. By their own admission, Bon Secours begged Miller to stay, so they knew of her intention to quit if they did not pose an accommodation that she felt would not physically injure her.

Deliberateness is shown if company personnel know of the untenable conditions and take no steps to remedy the situation; an employer may not insulate itself entirely from liability by taking some token action in response to intolerable conditions. Here, Miller believed that using the matrix was an untenable condition and not even a token action was taken to provide another interim task for her.

There is a genuine issue as to whether Bon Secours' response was

_____

**1** On page 10 of the Reply, Brenda Johnson is quoted as having stated that "[she] was told that it was a business decision to let Nancy go."

**2** See page 38 of the Appellee Brief.

9

reasonably calculated to end a working environment Miller found intolerable. "Intolerability of working conditions ... is assessed by the objective standard of whether a `reasonable person' in the employee's position would have felt compelled to resign.... An employee is protected from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers. He is not, however, guaranteed a working environment free of stress." Bristow , 770 F.2d at 1255. Intolerability requires that a reasonable person in the plaintiff's position would have felt compelled to resign. See id.

Demoting an employee can constitute an unreasonably harsh condition of employment, "especially where the demotion is essentially a career-ending action or a harbinger of dismissal." Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994). However, a "slight decrease in pay coupled with some loss of supervisory responsibilities" will not suffice to prove constructive discharge. Id. (quoting Jurgens v. EEOC, 903 F.2d 386, 392 (5th Cir. 1990)).

Stephens v. C.I.T. Group/Equipment Fin., Inc. , 955 F.2d 1023 (5th Cir. 1992), is instructive here. There, an employer appealed a jury verdict for an employee on a claim of age discrimination and constructive discharge. The employer had demoted the worker and reduced his responsibilities. His salary was also cut by twenty percent. In evaluating the evidence, the Fifth Circuit concluded that: "The combination of the demotion, the continuing limitations on his salary and responsibility, and [his boss's] repeatedly asking him whether he was going to quit his job, could make working conditions intolerable for a reasonable person in [the employee's] position." Id. at 1027. See also J.P. Stevens & Co. v. NLRB, 461 F.2d 490, 494 (4th Cir. 1972) (finding that reducing employee's rate of pay with a discriminatory intent constitutes constructive discharge); Guthrie v. Tifco Indus., 941 F.2d 374, 377 (5th Cir. 1991) (demotion from vice president and general manager to senior buyer with substantial reduction in salary establishes prima facie case of constructive discharge); Zabielski v. Montgomery Ward & Co., 919 F.2d 1276, 1281 (7th Cir. 1990) (holding that constructive discharge can be evidenced by demotion from managerial to sales job and accompanying loss of salary).

10

Given these precedents, Miller has presented sufficient evidence to find that there is a genuine issue of material fact as to whether Miller's work conditions were intolerable. Although she was not formally "demoted," she went from having a named position and specified duties as the Office Clerk, to being on an as-needed basis and having part of her responsibilities reassigned to other workers.**3** Both parties place in issue whether or not her position was in fact eliminated, but the facts submitted by both lead to a conclusion that she had less responsibility. A jury could reasonably infer that Bon Secours intended to make Miller's working conditions intolerable so that she would resign. A jury should have the responsibility to apply the reasonable person standard in assessing whether Miller's working conditions were intolerable.

Moreover, the same facts that might lead a jury to find deliberateness and intolerability could also lead to an inference of discrimination by Bon Secours. The majority states that Miller's claim must fail because there is no evidence that could "give rise to an inference of discriminatory animus." However, a reasonable jury could find that the facts surrounding Miller's resignation, including Bon Secours' insistence on assigning Miller "special projects" which she was incapable of completing because of her disability, give rise to an inference of illegal discrimination. Where the employer's intent is subject to dispute, as in this case, the determination of the employer's intent should not be resolved on summary judgment; it should be left to the jury to determine whether the employer had a discriminatory animus.

Accordingly, I would reverse the district court's award of summary judgment and remand this case for a jury to determine whether Miller was constructively discharged because of her disability.

_____

**3** See page 7 of Reply Brief.

11